IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KIMBERLY TOMER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-22-1020-P |
| | ) |
| KILOLO KIJAKAZI, | ) |
|   Acting Commissioner of the | ) |
|   Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## **ORDER**

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. Defendant has answered the Complaint and filed the administrative record (hereinafter AR___), and the parties have briefed the issues. For the following reasons, Defendant's decision is reversed and remanded for further proceedings consistent with this opinion.

I. Administrative History and Final Agency Decision

Plaintiff filed her application for disability insurance benefits on July 28, 2020, alleging she became disabled on March 24, 2020. AR 24. The Social Security Administration denied Plaintiff's application on December 11, 2020, *see id.*, and on reconsideration on June 25, 2021. *Id.*

Plaintiff appeared with counsel and testified at an administrative telephonic hearing conducted before an Administrative Law Judge ("ALJ") on December 15, 2021. AR 46-78. On April 20, 2022, the ALJ issued a decision in which she found Plaintiff was not disabled within the meaning of the Social Security Act. AR 21-39.

Following the agency's well-established sequential evaluation procedure, the ALJ found at the first step that Plaintiff had not engaged in substantial gainful activity since March 24, 2020, the alleged disability onset date. AR 27. At the second step, the ALJ found Plaintiff had the following severe impairments: migraines, trochanteric bursitis, polyarthralgia, inflammatory arthritis, cervical degenerative disease, and fibromyalgia. *Id.* At the third step, the ALJ found these impairments were not *per se* disabling as Plaintiff did not have an impairment or combination of impairments that met or medically equaled the requirements of a listed impairment. AR 30.

At step four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work with certain additional limitations. AR 32. Relevant to this appeal, those limitations included an ability to tolerate no more than occasional exposure to vibration, extreme cold, extreme heat, humidity, and wetness. Plaintiff must also avoid concentrated exposure to dust, gases, fumes, and other pulmonary irritants. *Id.*

Relying on the VE's testimony as to the ability of a hypothetical individual with Plaintiff's work history, age, education, and determined RFC, the ALJ concluded Plaintiff could perform her past relevant work as a utilization review coordinator. AR 37. Continuing to rely on the VE, the ALJ found Plaintiff could also perform other jobs that exist in the significant numbers in the national economy, including office helper, office clerk, and information clerk. AR 37-38. Based on these findings, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, from March 24, 2020 through April 20, 2022, the date of the decision. AR 38-39.

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. 20 C.F.R. § 404.981; *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009).

## II. Issues Raised

Plaintiff raises two issues on appeal. First, Plaintiff contends the ALJ failed to properly consider her subjective complaints related to symptoms resulting from her migraines. Doc. No. 15 at 3-11. Second, Plaintiff asserts the ALJ's RFC is not supported by substantial evidence. *Id.* at 10-11.

## III. General Legal Standards Guiding Judicial Review

Judicial review of Defendant's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a

whole and whether the correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, __ U.S. __, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citations, quotations, and brackets omitted). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* (citations omitted). While a court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, a court does not reweigh the evidence or substitute its own judgment for that of Defendant. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

IV.   Relevant Evidence of Record

Plaintiff initially began obtaining medical treatment for her migraines in January 2014 from Dr. Wayne Wasemiller. AR 593-95. In November 2019, Plaintiff reported to Dr. Wasemiller that she was experiencing two to three migraines per

week and that they could be quite debilitating. AR 624. She continued to receive treatment from Dr. Wasemiller until May 2020. AR 629-34.

Plaintiff asserts that somewhere around March 2020, her migraines worsened, and she was experiencing four to five per week. AR 629. On May 18, 2020, Plaintiff reported to Dr. Wasemiller that she had been working from home due to the worldwide COVID-19 pandemic. *Id.* At that time, approximately two months after Plaintiff's alleged disability onset date, Plaintiff reported that her migraines had improved and she was experiencing two to three per week. *Id.*

On September 23, 2020, following a referral by her primary care physician, Plaintiff began treatment with Dr. Marguerite Butchee. AR 635-42. Dr. Butchee noted that Plaintiff's migraines had been poorly controlled for the previous three to four years, she had switched her job three times due to migraines, and that they are very disruptive to her life. AR 635. Plaintiff reported that she was experiencing migraines each day, including severe migraines two times per month that last three to four days. *Id.* She further reported her migraines result in photophobia, phonophobia, osmophobia, kinesophobia, thermophobia, neck pain, nausea, dizziness, and difficulty concentrating. *Id.* Plaintiff reported that migraine triggers include hormonal changes, bright light, smoke, weather changes, lack of sleep, stress, odors, and noise. *Id.*

Dr. Butchee recorded the following regarding Plaintiff's treatment history:

> Medications at initial visit: Trokendi 200 mg once daily, Verapamil 120 mg once daily, trazadone nightly, Fioricet 1-2 tabs daily, Tylenol 10 tabs a week, Imitrex 2 tabs a week, Naproxen 1 tablet daily[.]
>
> Past preventive medications tried, result: Trokendi (effective), verapamil (somewhat effective), Topamax (caused decreased hearing), Lyrica (weight gain), amitriptyline (unsure if effective), Cymbalta (jitery (sic), nausea, ineffective)[.]
>
> Past abortive medications tried, result: aspirin, [a]dvil, codeine, trazadone, fioricet, motrin, naproxen, tylenol, tramadol, imitrex (effective)[.]

AR 449. Following an examination as well as a further review of Plaintiff's medical history, Dr. Butchee diagnosed Plaintiff with chronic migraine; migraine with aura and without status migrainosus, not intractable; migraine without aura and without status migrainosus, not intractable; and medication overuse syndrome. AR 635-40. With regard to the latter, Dr. Butchee explained,

> In addition to migraine, there is also probably a component of medication overuse headache, given the long-standing reliance on abortive therapy only. We discussed medication overuse syndrome and patient was provided educational material on this subject. Patient is aware that treatment of this condition includes stopping ALL pain medications or muscle relaxants. They are aware that during the time of medication withdraw[al,] headaches are likely to worsen.

AR 640. Dr. Butchee prescribed Botox treatment as well as changes to Plaintiff's oral medications. AR 640-41.

On September 30, 2020, Plaintiff received her first Botox injections. AR 643-45. Dr. Butchee prescribed these injections to occur every twelve weeks. AR 644,

646-47, 657-59, 1031-33, 1077-79.[1] Additionally, with regard to oral medications, Dr. Butchee continued "Trokendi 200 mg once daily and verapamil 120 mg once daily for migraine prevention (medication you take daily regardless of headache to prevent migraines), and gradually build it up as tolerated." AR 452. She also prescribed Naproxen and Phenergan or Reglan to take on an as needed basis, at the onset of a headache. AR 452-53, 655. Dr. Butchee indicated that the latter medications would help clear medication overuse headaches. AR 452. Dr. Butchee later advised Plaintiff to "avoid Fioricet (take 1 tablet every other day for a week and then stop), Tylenol and Imitrex (no more than 9 tablets a month)." AR 654. During Plaintiff's medical visits, Dr. Butchee recorded Plaintiff as awake, alert, and oriented, with normal attention span and concentration. AR 639-40, 654, 1057.

Plaintiff reported the injections were increasingly effective. By the time of the final injection reflected in the record, on September 8, 2021, Plaintiff reported that she was experiencing 20 migraines per month, with approximately eight of those being severe. AR 1078. This was an improvement over Plaintiff's report from the previous year when she reported experiencing migraines each day, including severe migraines two times per month that last three to four days. AR 635.

---

[1] At each of these appointments, Plaintiff received injections at 31 points around her head and neck. AR 643, 646, 657, 1032, 1078.

V. <u>Analysis</u>

On appeal, Plaintiff asserts that in reaching her decision, the ALJ failed to properly consider Plaintiff's subjective reports regarding her migraines. Defendant disagrees stating that the ALJ provided specific, record-based reasons to discount Plaintiff's testimony. The Court agrees the ALJ did provide specific, record-based reasons to discount Plaintiff's subjective reports, but not all of them are valid.

This Court's review of the ALJ's consideration of Plaintiff's subjective reports is guided by two principles. First, such "determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Second, "findings as to [subjective reports] should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (additional alteration omitted). In addition to objective evidence, the ALJ should consider certain factors in evaluating a claimant's credibility, including:

    1. Daily activities;

    2. The location, duration, frequency, and intensity of pain or other symptoms;

    3. Factors that precipitate and aggravate the symptoms;

    4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

    5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, 2017 WL 5180304, at *7-8; *accord* 20 C.F.R. § 404.1529(c)(3).

As an initial matter, many courts have noted that migraines present a particular difficulty. *See, e.g., Groff v. Comm'r of Soc. Sec.*, No. 7:05-CV-54, 2008 WL 4104689, at *6–8 (N.D.N.Y. Sept. 3, 2008) (recognizing difficulty of objectively identifying migraines as medically determinable impairments); *Federman v. Chater*, No. 95 Civ. 2892 (LLS), 1996 WL 107291, at *2–3 (S.D.N.Y. Mar. 11, 1996) (same); *see also Abdon v. Astrue*, No. 10-96-GWU, 2010 WL 5391452, at *5 (E.D. Ky. Dec. 22, 2010) (noting difficulty of evaluating subjective allegations of pain stemming from migraines for purposes of evaluating pain in the context of determining the RFC); *McCormick v. Sec'y of Health & Human Servs.*, 666 F. Supp. 121, 123 (E.D. Mich. 1987) (noting "[migraine] headaches are not traced easily to an objective medical condition"), *aff'd*, 861 F.2d 998 (6th Cir. 1988). In *Groff*, the district court acknowledged "the elusive task a doctor faces in diagnosing this impairment as there exists no objective clinical test which can corroborate the existence of migraines." *Groff*, 2008 WL 4104689, at *7–8. The *Groff* court cited medical literature noting,

9

> [T]he cause [of a migraine] is unknown and the pathophysiology is not fully understood . . . . The mechanism for migraines is not well defined, but several triggers are recognized[, including] insomnia, barometric pressure change, and hunger . . . . Symptoms usually follow a pattern in each patient . . . . The patient may have attacks daily or only once every several months. Diagnosis is based on the symptom patterns when there is no evidence of intracranial pathologic changes. Migraine is more probable when the patient has a family history of migraine . . . . No diagnostic tests are useful, except to exclude other causes. Treatment depends on the frequency of attacks and the presence of comorbid illness. In general, treatment can be classified as prophylactic, abortive, or analgesic.

*Id.* (quoting THE MERCK MANUAL 1376 (17th ed. 1999)).

In the present case, pursuant to SSR 16-3p, the ALJ found that Plaintiff's subjective reports were not supported by the record based on Plaintiff's daily activities, conservative medical treatment, and work history, as well as Dr. Butchee's objective medical examination notes. AR 33-35. Beginning with Plaintiff's treatment history, the ALJ stated that Plaintiff's "objective examinations remained entirely normal—the claimant was alert, awake, attentive, and cooperative, and exhibited intact motor movement, cranial nerves, language, attention, and sensation." AR 34 (citations omitted). The ALJ noted that "a 2021 head MRA and brain MRI were both unremarked—there was no artery abnormality, no hemorrhage, mass, or lesions, no areas of abnormal enhancement, no signs of vascular abnormality, and the midline structures were in the appropriate position." *Id.* (citing 660-62, 672-75).

However, as previously discussed above, migraines are not necessarily susceptible to objective findings. *See, supra. See also Barrus v. Berryhill*, No. 1:16-CV-0056-JNP-EJF, 2017 WL 4772580, at *9 (D. Utah Sept. 16, 2017) ("Holding the absence of an objective diagnostic test for migraines against a claimant and finding the claimant's subjective complaints not credible as a result makes no sense. The claimant is no more or less credible based on the state of [the] medical field's development in migraine diagnosis and treatment."). Thus, the relevance of the objective evidence is not clear from the ALJ's decision.[2]

The ALJ provided a number of other reasons to discount Plaintiff's subjective reports. The ALJ also concluded that Plaintiff's medical treatment was "generally conservative and limited" and was therefore, "inconsistent with her allegations of disabling migraines[.]" AR 35. The ALJ stated that Plaintiff only visited her medical providers a handful of times throughout the year. *Id.* The ALJ also stated that she expected more aggressive treatment:

> The undersigned would also expect more aggressive treatment modalities, like ongoing immunosuppressive therapy, surgical intervention, physical therapy, pain management, or more frequent Botox injections—yet the claimant only received five Botox injections over the two-year adjudicated period, and her doctor stopped her immunosuppressive regime.

---

[2] Significantly, Dr. Butchee continued to treat Plaintiff's migraines throughout these otherwise "normal" objective examinations.

*Id.*

Dr. Butchee specifically prescribed Botox injections to occur every 12 weeks and the record contains absolutely no evidence that Plaintiff could undergo more frequent treatment. Moreover, the record does not indicate that Plaintiff missed medical appointments but instead, that Plaintiff saw her physicians as directed. Indeed, Plaintiff reached out to Dr. Butchee between formal appointments to report that the initial Botox injections were not alleviating her migraine pain. AR 445-46.[3] Finally, the record does not indicate the additional treatments to which the ALJ refers would have been beneficial to Plaintiff's migraines, or other impairments. Certainly, a physician never recommended any treatments to Plaintiff that she declined or refused.[4] It is not the ALJ's place to substitute her own judgment for that of medical providers. *See Strickland v. Astrue,* 496 F. App'x 826, 834 (10th Cir. 2012) ("We have repeatedly stressed that an ALJ may not interpose his own judgment over a physician with respect to medical findings."); *Miranda v. Barnhart,* 205 F. App'x 638, 641 (10th Cir. 2005) ("It is not the ALJ's prerogative to substitute his own

---

[3] Following her first Botox injection, Plaintiff contacted Dr. Butchee's office to report that she was experiencing migraines every day. AR 445. Dr. Butchee advised that it can take time for the Botox to build up and that the second round should feel more effective. AR 445-46. Dr. Butchee also prescribed a migraine medication to Plaintiff and advised her to not take more than nine per month. AR 446.

[4] Further, to the extent the ALJ intimated Botox injections constitute conservative treatment, the basis for this characterization is unclear. The record indicates that each appointment involved 31 injections in Plaintiff's head and neck area. *See, supra.*

judgment for that of [a medical provider]."); *Dockemeyer v. Colvin*, No. CIV-13-1328-HE, 2015 WL 586313, at *5 (W.D. Okla. Feb. 11, 2015) ("The ALJ improperly substituted his lay opinion for Dr. Pahl's professional opinion."); *see also, cf., Donaldson v. Astrue*, No. 10-cv-635-TLW, 2011 WL 4948519, at *8 n.3 (N.D. Okla. Oct. 17, 2011) ("The ALJ is not permitted to 'play doctor' by attempting to interpret medical testing results on his own.").[5]

The ALJ also discounted Plaintiff's subjective reports based on her work history. Prior to March 24, 2020, Plaintiff was employed by the Oklahoma Health Care Authority ("OHCA"). AR 53-54. Following that date, as the ALJ noted, Plaintiff received approximately six months of unemployment benefits. AR 35, 53-54. The ALJ reasonably noted these circumstances as discounting Plaintiff's contention that her migraines and other impairments rendered unable to work. AR 35.[6]

---

[5] In her Response, Defendant acknowledges the ALJ erred in her statements characterizing Plaintiff's treatment as conservative, but she argued it was harmless in light of the remaining reasoning within the ALJ's decision. Doc. No. 19 at 11. However, as explained herein, the Court concludes that much of the ALJ's remaining reasoning regarding Plaintiff's subjective reports is not supported by substantial evidence.

[6] The Court does notes that when the ALJ inquired as to whether Plaintiff was able to complete her expected employment hours in spite of her impairments prior to the COVID-19 pandemic, Plaintiff testified, "[M]ost of the time." AR 55-56. This response indicates, but does not establish, her impairments may have interfered with her ability to work at that time.

In August 2020, Plaintiff began working part time for OHCA, approximately 12 hours per week. AR 55. In her decision, the ALJ stated:

> While the claimant alleges[] she was subsequently unable to return to full time work due to her physical impairments, she did continue to work part time thru July 2021, which indicates she retained some functional capacity for work. In other words, the claimant's continued work activity thru mid-2021, albeit part time, calls into question the alleged frequency and intensity of her migraines during that period—particularly[] since the claimant's job required her to work on a computer, but the claimant testified that just short periods of exposure to computer lights trigger her migraines.

AR 35.

Upon reviewing Plaintiff's specific testimony, it is apparent the ALJ's reasoning lacks support. Plaintiff testified that she struggled to complete 12 hours of work per week for OHCA due to her migraines and joint pain. AR 55. More significantly, her testimony regarding computer exposure as a trigger was directly related to the same part time job. Plaintiff explained that by June 2021, she was experiencing migraines seven days per week and that "if I didn't wake up with a migraine the computer triggers it within ten minutes." AR 59. As a result, Plaintiff resigned from her part-time position. AR 58. Thus, the ALJ discounted Plaintiff's subjective reports because she worked part time at a job involving computer exposure when it was the same exposure that caused her to struggle to complete her hours and eventually resulted in her quitting the same job.

14

In considering Plaintiff's subjective reports, the ALJ followed the correct legal standards, as set forth in SSR 16-3p, 2017 WL 5180304, at *7-8 and 20 C.F.R. § 404.1529(c)(3). However, her conclusions are not supported by substantial evidence in the record. While there may be valid reasoning to discount Plaintiff's reports, it is not present in the ALJ's decision.[7]

VI.   Conclusion

Based on the foregoing analysis, the decision of the Commissioner is reversed and remanded for further administrative proceedings consistent with this opinion. Judgment will issue accordingly.

ENTERED this   28th   day of June, 2023.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE

---

[7] In light of this ruling, it is unnecessary to address the remaining argument Plaintiff raised on appeal. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").